**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARREN LARAY TOLES, JR., | ) | 1:07cv1568 OWW DLB HC |
| | ) | |
| Petitioner, | ) ) ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) | (Document 1) |
| T. FELKER, Warden, | ) | |
| Respondent. | ) | |

Petitioner Darren Laray Toles, Jr., ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

On November 4, 2005, in the Kern County Superior Court, a jury convicted Petitioner of possessing cocaine base for sale with a gang enhancement, and participation in a criminal street gang. On December 1, 2005, Petitioner was sentenced to a seven year prison term.[1]

Petitioner appealed to the Fifth District Court of Appeal. The court affirmed the conviction and sentence on December 6, 2006.

---

[1] The trial court struck Petitioner's prior conviction.

1    Petitioner filed a petition for review in the California Supreme Court, which was denied
2 on February 7, 2007.
3    On September 14, 2007, Petitioner filed the instant federal petition in the Sacramento
4 division of this Court. The action was transferred to the Fresno division on October 26, 2007.
5 Petitioner argues that there was insufficient evidence to support the possession charge.
6    Respondent filed its answer on February 8, 2008.
7    Petitioner did not file a traverse.

## STATEMENT OF FACTS

Officer Fred Torres is a Bakersfield Police Officer assigned to the Special Enforcement Unit, which investigates crimes that may be gang-related. Reporter's Transcript ("RT"), 29-30. On July 15, 2005, Officer Torres was with his partner, Officer Tom Meek, in a white unmarked car, in the area D & A Market. This area is known to the Special Enforcement Unit as an area with a high concentration of Country Boy Crips ("CBC") gang members. RT 31, 185. The officers received a call for service regarding subjects loitering in front of the market. RT 31. The officers, along with other officers from the unit, converged on the store in an attempt to gather as many suspects as possible. RT 32.

Officer Torres was driving eastbound down Casino Road. RT 34. As they approached the market with their lights off, they saw a group of about five to eight individuals, walking in their direction. The officers put their lights on, including a spotlight, to illuminate the subjects walking towards them. RT 39, 67. Petitioner was at the head of the group. As the officers illuminated them, the group immediately stopped, turned in the opposite direction and began walking hurriedly back to where they were coming from. RT 42.

Officer Torres saw Petitioner make a "pitching motion" with his right hand as he started walking away. RT 43. He did not recall seeing anything in Petitioner's hand and did not see any other individuals make the same hand motions. RT 45. He did not see anything leave his hand. RT 62. Officer Meek saw Petitioner's right hand go either to his waistband or his pocket and then make a throwing movement towards the ground. RT 96. He did not see anything leave his hand, as it was dark. RT 97.

Officer Torres got out of the patrol car and caught up with Petitioner, while other officers in the unit contacted the other individuals. RT 46. Within a minute, Officer Torres went to the area where he had seen Petitioner make the pitching motion and found a $20 bill crumpled up, with 11 individually-wrapped pieces of rock cocaine inside. RT 46-47, 66, 88. There was no other trash in the area, which was "relatively clean." RT 48. There were no other people in the area where Officer Torres found the money and drugs. RT 75. The pieces weighed a total of 3.2 grams. RT 122.

Officer Torres also observed a tattoo on Petitioner's right arm of "CBC," which is a common tattoo among CBC members. RT 52. He also had a tattoo of "WLSS" on his left arm, which signified an area known to be controlled by the CBC. RT 53, 158. When Petitioner was booked into jail, he stated that he affiliated with the CBC. RT 54.

Officer Torres estimated that there were approximately 30 to 50 individuals in front of the market that evening. RT 54. About six of those people were wearing powder blue clothing, the color associated with the CBC. RT 102.

Officer Meek believed that the rock cocaine was possessed for sale because it was individually packaged. RT 104. The street value was approximately $250 to $300. RT 105.

Officer Jerry Whisenhunt testified as a gang expert. He explained that the CBC is known for selling rock cocaine. RT 155. He also explained that the tattoos found on Petitioner are related to the gang. RT 157-158.

In December 1999, Petitioner was found among a group of documented CBC members in a known hangout. RT 165. In November 2000, Petitioner, who was wearing powder blue boxer shorts, was shot in front of his house by a rival gang member. RT 167-168. In November 2001, officers responded to Petitioner's house as part of a narcotics investigation. Petitioner was with documented CBC members and his house was located in an area controlled by the CBC. RT 169-170. In March 2002, Petitioner was contacted near his house and ran from officers. RT 171. Officer Whisenhunt also reviewed eight prior bookings of Petitioner in which he requested to be housed with CBC members. RT 180-181. However, Petitioner provided information to help convict another CBC member, something that Officer Whisenhunt thought unusual. RT 213.

Petitioner testified in his own defense. He explained that he got his tattoos when he was younger and they did not denote gang membership. RT 231. He was at the D & A Market around midnight on July 15, 2005, to buy something to drink. RT 235. When he saw the officers, he didn't have any reason to avoid them, but he didn't want to be harassed and tried to leave the area. RT 239. He does not remember making a hand gesture that night and denied that he possessed rock cocaine. RT 259. He doesn't consider himself a member of the CBC but admitted that he has been friendly with some members. RT 260.

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner challenges his conviction imposed by the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.    Sufficiency of the Evidence

Petitioner contends that there was insufficient evidence to support his conviction of possession of cocaine base for sale. He challenges the possession finding, and argues that because he was in a large area over which he did not have exclusive control, the prosecution could not show that the drugs were his.

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324 n. 16.

In denying his claim on appeal, the Fifth District Court explained:

> In reviewing the sufficiency of the evidence supporting a conviction, the appellate court determines whether there is any substantial evidence of the existence of each element of the offense charged. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13 .) Direct and circumstantial evidence is considered in the light most favorable to the judgment and all reasonable inferences are drawn in its favor. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.) We do not reweigh evidence or determine if other inferences more favorable to the defendant could have been drawn from it. The trier of fact assesses the credibility of witnesses and draws reasonable inferences from the evidence. (*People v. Lewis* (2001) 26 Cal.4th 334, 361.) "The California Supreme Court has held, 'Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' [Citations.]" (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1430.)
>
> The following elements must be shown to prove a drug possession charge: the defendant (1) exercised dominion and control over the contraband; (2) with knowledge of the item's presence; and (3) and with knowledge of the item's character. (*People v. Groom* (1964) 60 Cal.2d 694, 696.) These elements may be proven by reasonable inferences drawn from circumstantial evidence. (*Id*. at pp. 696-697.)
>
> Appellant contends the drug possession count cannot stand because the record lacks evidence proving that appellant was in actual possession of the $20 bill containing the rocks of cocaine. He points out that no witness testified that he or she saw an object leave appellant's hand and that other people were in the area when he made the tossing motion. Thus, he posits that one of these people could have dropped the $20 bill containing the rocks of cocaine. We reject this argument because a reasonable trier of fact could infer from the totality of the evidence that appellant removed the crumpled $20 bill containing the rock cocaine from his waistband or pocket and tossed it to the ground. Officer Meeks (sic) saw appellant reach into his waistband or pocket immediately prior to making a tossing motion. Both officers observed appellant make a pitching or tossing motion. No one else in the group made such a motion with their hands. No one entered the area where the money and cocaine was found before Officer Torres searched it. No trash or other objects were found in this area. From this evidence, a jury reasonably could infer that appellant possessed the $20 bill containing the rocks of cocaine and that he tossed it to the ground after the lights were activated. Thus, appellant's challenge to the sufficiency of the evidence fails, as does his associated claim that the conviction infringed his state and federal constitutional due process rights.

1       The state courts' decision was not contrary to, or an unreasonable application of, clearly
2 established Supreme Court precedent. Although Petitioner believes that the possession finding
3 was based on speculation, the evidence and related inferences, when viewed in the light most
4 favorable to the prosecution, could have led a rational trier of fact to find the essential elements
5 of the crime beyond a reasonable doubt. For example, both Officer Torres and Officer Meek saw
6 Petitioner make a pitching, or throwing, motion with his right hand. RT 43, 96. Prior to making
7 the throwing motion, Officer Meek observed Petitioner's right hand go either to his waistband or
8 his pocket. RT 96. Within a minute, Officer Torres went to the area where he saw Petitioner
9 make the pitching motion and found the $20 bill with the individual packets of rock cocaine
10 inside. RT 46-47, 66, 68. From this evidence, a jury could reasonably infer that Petitioner had
11 the drugs on his person and threw them once the officers put on their lights. The fact of
12 possession may be established by circumstantial evidence and any reasonable inferences drawn
13 therefrom. People v. Rice, 59 Cal.App.3d 998, 1003 (1976).

14       As he did on appeal, Petitioner suggests that because he was with a large group of people
15 in an area where known drug dealers congregate, the inference that the drugs were his was not
16 supported. However, although neither officer saw anything leave Petitioner's hand, Officer
17 Torres testified that he did not see anyone else make such an arm motion. RT 45, 62, 97.
18 Moreover, there was no other trash in the area, which was "relatively clean," and there were no
19 other people in the area where Officer Torres found the money and drugs. RT 48, 75. Exclusive
20 possession of the item, or the place where it is found, is not necessary to show dominion and
21 control. People v. Rushing, 209 Cal.App.3d 618, 622 (1989).

22       Petitioner mentions the "future finding that [he] had the inten[t] to [sell]," but it is unclear
23 whether Petitioner is attempting to challenge this finding because he provides no further
24 explanation or support. In any event, to the extent he tries to present such an argument to this
25 Court, he cannot do so. The issue was not presented to any state court and is therefore
26 unexhausted. 28 U.S.C. § 2254(b)(1).

27
28

**RECOMMENDATION**

For the reasons discussed above, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  July 17, 2008            /s/ Dennis L. Beck
                                 UNITED STATES MAGISTRATE JUDGE